**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

ELAINE WANG,                                     :
                                                 :
               Plaintiff,                        :     Civil Action No. 1:21-cv-5363
                                                 :
v.                                               :     **COMPLAINT FOR VIOLATIONS OF**
                                                 :     **SECTIONS 14(a) AND 20(a) OF THE**
STERLING BANCORP, MONA                           :     **SECURITIES EXCHANGE ACT OF**
ABOELNAGA KANAAN, JOHN P.                        :     **1934**
CAHILL, NAVY E. DJONOVIC,                        :
FERNANDO FERRER, ROBERT S.                       :     **JURY TRIAL DEMANDED**
GIAMBRONE, JACK L. KOPNISKY,                     :
JAMES J. LANDY, MAUREEN B.                       :
MITCHELL, PATRICIA M. NAZEMETZ,                  :
RICHARD L. O'TOOLE, RALPH F.                     :
PALLESCHI, BURT B. STEINBERG, and                :
WILLIAM E. WHISTON,                              :
                                                 :
               Defendants.                       :
--------------------------------------------------------  :

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Sterling, Inc., ("Sterling or the

"Company") and the members Sterling's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed merger between Sterling and Webster Financial Corporation and its affiliates

("Webster").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on June 11, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sterling will merge with and into Webster, with Webster as the surviving corporation (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Sterling stockholder will receive 0.4630 Webster shares (the "Merger Consideration").

3.      As discussed below, Defendants have asked Sterling's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Citigroup Global Markets Inc. ("Citigroup") and Keefe, Bruyette & Woods, Inc. ("KBW" and together with Citigroup, the "Financial Advisors"), in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sterling's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Sterling Bancorp is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Sterling stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Mona Aboelnaga Kanaan has served as a member of the Board since May 2019.

11.     Individual Defendant John P. Cahill has served as a member of the Board since 2011.

12.     Individual Defendant Navy E. Djonovic has served as a member of the Board since 2010.

13.     Individual Defendant Fernando Ferrer has served as a member of the Board since 2002.

14.     Individual Defendant Robert S. Giambrone has served as a member of the Board since 2015.

15.     Individual Defendant Jack L. Kopnisky has served as a member of the Board since 2011 and is the Company's President and Chief Executive Officer.

16.     Individual Defendant James J. Landy has served as a member of the Board since 2000.

17.     Individual Defendant Maureen B. Mitchell has served as a member of the Board since 2018.

18.     Individual Defendant Patricia M. Nazemetz has served as a member of the Board since 2013.

19.     Individual Defendant Richard L. O'Toole has served as a member of the Board since 2012 and is the Chairman of the Board.

20.     Individual Defendant Ralph F. Palleschi has served as a member of the Board since 1996.

21.     Individual Defendant Burt B. Steinberg has served as a member of the Board since 2000.

22.     Individual Defendant William E. Whiston has served as a member of the Board since 2013.

23.     Defendant Sterling a Delaware corporation and maintains its principal offices at Two Blue Hill Plaza, Second Floor, Pearl River, New York 10965.  The Company's stock trades on the New York Stock Exchange under the symbol "STL."

24.     The defendants identified in paragraphs 10-22 are collectively referred to as the "Individual Defendants" or the "Board."

25.     The defendants identified in paragraphs 10-23 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

26.     Sterling operates as the bank holding company for Sterling National Bank that provides various banking products and services to commercial, consumer, and municipal clients in the United States. The Company accepts deposit products, including interest and non-interest checking, savings, money market, time, and demand deposits, as well as certificates of deposit. Its loan products include commercial and industrial, asset-based, payroll finance, warehouse, factored receivables, equipment finance, public sector finance, and commercial real estate, such as multi-family loans; residential and commercial mortgage loans; consumer loans, such as homeowner loans, home equity lines of credit, new and used automobile loans, and personal unsecured loans; and acquisition, development, and construction loans. The Company also engages in the third-party provider to sell mutual funds and annuities; and provision of annuity and wealth management products. As of December 31, 2020, it operated 76 full-service retail and commercial financial centers in the New York Metro Market and the New York Suburban Market. Sterling was founded in 1888 and is headquartered in Pearl River, New York.

27.     On April 19, 2021, the Company and Webster jointly announced the Proposed Transaction:

> WATERBURY, Conn. and PEARL RIVER, New York, April 19, 2021 (GLOBE NEWSWIRE) -- Webster Financial Corporation (NYSE: WBS) ("Webster") and Sterling Bancorp (NYSE: STL) ("Sterling") jointly announced today that their boards of directors have approved by unanimous vote a definitive agreement under which the two companies will combine in an all-stock merger of equals transaction with a total market value of approximately $10.3 billion.

Under the terms of the agreement, Sterling will merge into Webster, and Sterling's shareholders will receive a fixed exchange ratio of 0.463 of a Webster share for each share of Sterling stock they own. Following the closing of the transaction, Webster shareholders will own approximately 50.4% of the combined company, and Sterling shareholders will own approximately 49.6%, on a fully diluted basis.

The combined company will retain the Webster name, establish a new corporate headquarters in Stamford, CT, and have a continued multi-campus presence in the greater New York City area and Waterbury, CT.

The pro forma company will be a powerhouse player in the Northeast with highly differentiated businesses in commercial banking, health savings and consumer and digital banking. Enhanced scale will unlock growth and value across each of these business lines.

- Commercial banking unlocks a diversified, multi-billion dollar opportunity to grow regional and national C&I, commercial real estate and Sponsor & Specialty loans through expanding existing relationships and new clients.

- HSA Bank, a division of Webster Bank and a top national provider of health savings accounts nationally, will benefit from increased capacity for growth and investment.

- Consumer, small business and direct banking will benefit from local density and increased investment in digital capabilities.

"We are excited to combine the best of both companies to create an industry leader," said Jack L. Kopnisky, President & CEO of Sterling. "Webster and Sterling have much in common: distinguished client service, diversity of revenue, funding sources and assets, and disciplined capital allocation. The increased capabilities and scale of our two organizations are attractive propositions for our clients, communities, shareholders and colleagues."

"We are bringing together two high-performing organizations with strong cultural and business model alignment to create a powerhouse Northeast bank," said John R. Ciulla, Chairman, President & CEO of Webster. "This combination provides exceptional financial benefits and enables us to more aggressively invest in key businesses and activities to enhance value for our customers, our communities, our shareholders and our bankers."

**Strategic Benefits of the Proposed Merger**

- Powerhouse Northeast Bank: Combined $63 billion in assets, $52 billion in deposits, and $42 billion in loans provides scale to deliver best-in-class financial performance and drive value for all stakeholders.

- Highly Differentiated Businesses: Webster and Sterling have complementary businesses and strong franchises in commercial, health savings and consumer and digital banking. Relationship- and expertise-based commercial banking and a local presence are enhanced by national reach in both lending and deposit gathering, resulting in sustainable high performance and competitive advantages.

- Significant Loan Growth Potential: The combined company's Northeast footprint is the most densely populated in the nation. Through diversification and scale, commercial banking will unlock opportunities to grow relationships with existing clients and enhance operating leverage, particularly in commercial lending. Webster and Sterling's niche national lending platforms contribute further growth, risk-adjusted returns and diversification.

- Best-in-Class Deposit Franchise: Together, Webster and Sterling are strongly positioned with a low-cost, long-duration deposit base. The pro forma company will have 200+ financial centers in the Northeast market. In addition, it will benefit from the ability to more aggressively grow and invest in HSA Bank, a top health savings platform nationally with 12% market share and strong growth characteristics.

**Financial Benefits of the Proposed Merger**

- Exceptional Profitability: The combined company is projected to generate a ROAA of 1.40% and ROATCE of 17% – among the strongest return profiles nationally.

- Enhanced Revenue Growth Potential: Scale and diversification unlock compelling revenue growth opportunities by expanding selected commercial lending portfolios, aggressively growing HSA Bank, and enhancing digital banking offerings.

- Strong GAAP EPS Accretion to Both Companies' Shareholders: >20% to Webster, >10% to Sterling, after realizing $120 million of projected cost savings.

- Significant Excess Capital Generation: The combined company is projected to generate $440 million per year, or ~$2.50 per share, of excess capital after organic growth and dividends, available for both capital investments and share repurchases.

**Governance and Leadership**

Reflecting the equal contribution both partners bring to the combined company, the board and executive management team will draw from both sides:

- Jack L. Kopnisky, President & CEO of Sterling, will serve as Executive Chairman of the combined company for 24 months after closing, and will continue in a consulting capacity for an additional 12 months thereafter.

- John R. Ciulla, Chairman, President & CEO of Webster, will serve as President & CEO of the combined company until 24 months after closing, at which time he will become Chairman, President & CEO.

- The combined company's executive management team will be comprised of executives from both companies, including Luis Massiani as Chief Operating Officer and Glenn I. MacInnes as Chief Financial Officer.

- The board of directors of the combined company will have 15 directors, consisting of eight directors from Webster and seven directors from Sterling, including Jack L. Kopnisky and John R. Ciulla.

- William L. Atwell, current lead independent director of Webster, will serve as lead independent director for 24 months after closing, after which the Lead Independent Director will be a legacy Sterling director.

**Timing and Approvals**

The merger is expected to close in the fourth quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of required regulatory approvals and approval by the shareholders of each company.

**Advisors**

J.P. Morgan Securities, LLC acted as lead financial advisor to Webster and rendered a fairness opinion to its board of directors.

Piper Sandler & Co. also rendered a fairness opinion to Webster's board. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Webster.

Citigroup Global Markets Inc. acted as lead financial advisor to Sterling and rendered a fairness opinion to its board of directors. Keefe, Bruyette & Woods, Inc. also rendered a fairness opinion to Sterling's board. Squire Patton Boggs (US) LLP is serving as legal counsel to Sterling.

\* \* \*

28.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Sterling's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

## B.     The Materially Incomplete and Misleading Registration Statement

29.     On June 11, 2021, Sterling and Webster jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

30.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses.

The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Webster Projections") and provided them to the Board and the Financial Advisors by management of both Sterling and Webster with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

31.    For the Company Projections, the Registration Statement fails to disclose: (i) the extrapolated financial projections for Sterling for the years 2023 through 2026; (ii) the basis for selecting estimated long-term annual net income growth rates of 5.0% from 2023 through 2026 and estimated long-term asset growth rates of 3.0% from 2023 through 2026.

32.    For the Webster Projections, the Registration Statement fails to disclose: (i) the extrapolated financial projections for Webster for the years 2023 through 2026; (ii) the basis for selecting estimated long-term annual net income growth rates of 5.0% from 2023 through 2025 and 3.0% for 2026 and estimated long-term asset growth rates of 3.0% from 2023 through 2026.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33.     With respect to Citigroup's *Selected Public Companies Analysis* for Sterling, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Citigroup in the analysis.

34.     With respect to Citigroup's *Dividend Discount Analysis* for Sterling, the Registration Statement fails to disclose: (i) the terminal values for the Company; (ii) Sterling's calendar year 2026 estimated earnings; (iii) the basis for selecting the range of terminal price-to-earnings ratio multiples of 10.0x to 13.6x; (iv) the basis for selecting the discount rates ranging from 12.9% to 14.6%; and (v) the present value of the distributable cash flow that Sterling was forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2025.

35.     With respect to Citigroup's *Selected Public Companies Analysis* for Webster, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Citigroup in the analysis.

36.     With respect to Citigroup's *Dividend Discount Analysis* for Webster, the Registration Statement fails to disclose: (i) the terminal values for the Company; (ii) Webster's calendar year 2026 estimated earnings; (iii) the basis for selecting the range of terminal price-to-earnings ratio multiples of 13.2x to 17.8x; (iv) the basis for selecting the discount rates ranging from 11.1% to 12.5%; and (v) the present value of the distributable cash flow that Webster was forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2025.

37.     With respect to Citigroup's price targets analysis for Sterling and Webster, the Registration Statement fails to disclose: (i) the price targets observed; and (ii) the research analysts selected for the analysis.

38.    With respect to Citigroup's retention as the Company's financial advisor, the Registration Statement fails to disclose the amount of compensation received by Citigroup and affiliates for services provided to the Company and its affiliates.

39.    With respect to KBW's *Selected Companies Analysis* for Webster, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by KBW in the analysis.

40.    With respect to KBW's *Sterling Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the terminal values for the Company; (ii) Sterling's calendar year 2026 estimated earnings; (iii) the basis for selecting the range of multiples of 10.0x to 14.0x; (iv) the basis for selecting the discount rates ranging from 12.5% to 14.5%; and (v) the present value of implied future excess capital available for dividends that Sterling could generate over the period from December 31, 2021 through December 31, 2025 as a standalone company.

41.    With respect to KBW's *Webster Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the terminal values for Webster; (ii) Webster's calendar year 2026 estimated earnings; (iii) the basis for selecting the range of multiples of 12.0x to 16.0x; (iv) the basis for selecting the discount rates ranging from 12.5% to 14.5%; and (v) the present value of implied future excess capital available for dividends that Webster could generate over the period from December 31, 2021 through December 31, 2025 as a standalone company.

42.    With respect to KBW's *Pro Forma Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the terminal values for the pro forma combined entity; (ii) the pro forma combined entity's estimated calendar year 2026 estimated earnings; (iii) the basis for selecting the range of multiples of 11.0x to 15.0x; (iv) the basis for selecting the discount rates ranging from 12.5% to 14.5%; and (v) the present value of implied future excess capital available

for dividends that the pro forma combined entity could generate over the period from December 31, 2021 through December 31, 2025.

43.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

49.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Sterling within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Sterling, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sterling, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sterling, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

54.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 17, 2021                          **MELWANI & CHAN LLP**

                                   By:   */s/ Gloria Kui Melwani*
                                         Gloria Kui Melwani
                                         1180 Avenue of the Americas, 8th Fl.
                                         New York, NY 10036
                                         Telephone: (212) 382-4620
                                         Email: gloria@melwanichan.com

                                         *Attorneys for Plaintiff*